IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CECILIA SNYDER, individually and on behalf of classes of similarly situated individuals, | ) ) ) |
| *Plaintiff*, | ) No. ) |
| v. | ) ) |
| ICARD GIFT CARD, LLC, a Florida limited liability company, | ) ) Judge: ) |
| *Defendant*. | ) |

## CLASS ACTION COMPLAINT

Plaintiff Cecilia Snyder ("Plaintiff") brings this Class Action Complaint against Defendant iCard Gift Card LLC ("iCard" or "Defendant") to stop Defendant's practice of directing the transmission of unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by its conduct. Plaintiff, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. In an effort to promote its gift card products, Defendant, a provider to consumers of gift cards to retail stores such as Macy's, Sports Authority and REI through the internet, email, and other wireless communication methods, engaged in an invasive and unlawful form of marketing: the transmission of unauthorized advertisements in the form of "text message" calls to the cellular telephones of consumers throughout the nation.

2. By effectuating these unauthorized text message calls (hereinafter, "wireless spam" or "SMS Messages"), Defendant has violated consumers' statutory and privacy rights and

1

has caused consumers actual harm, not only because consumers were subjected to the aggravation and invasion of privacy that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

3. In order to redress these injuries, Plaintiff, on behalf of herself and a nationwide class and subclass of similarly situated individuals, brings this suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), which prohibits unsolicited text calls to cellular phones.

4. On behalf of the class and subclass, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## PARTIES

5. Plaintiff is a citizen of Nevada.

6. Defendant is a Florida limited liability company with its principal place of business in Florida. It does business throughout the United States, including in this District.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

8. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b) because Defendant resides in this District, Defendant transacts business in this District and a substantial part of the events concerning the wireless spam at issue occurred in this District.

## COMMON ALLEGATIONS OF FACT

9. In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

10. One of the newer types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

11. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

12. Unlike more conventional advertisements, SMS calls, and particularly wireless spam, invade privacy and can actually cost their recipients money because cell phone users like Plaintiff must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

13. Beginning in 2015, and continuing for weeks if not months, Defendant and its agents caused the mass transmissions of wireless spam to the cell phones of individuals it hoped were potential purchasers of its gift cards.

14. For instance, in July 2015, Plaintiff's cell phone rang, indicating that a text message call was being received.

15. The "from" field of the transmission was identified cryptically as "313131," which is an abbreviated telephone number known as an SMS short code operated by Defendant and/or its agents. The body of such text message read:

> Do you have an iPhone? Download the new iCard Gift Card app in the App Store and save 10% on your gift card purchase. Enter promo code: APP10

16. The use of an SMS short code by Defendant and its agents enabled Defendant's mass transmission of wireless spam to a list of cellular telephone numbers.

17. At no time did Plaintiff provide consent, including any written consent, to receive the above-referenced message or any other such wireless spam from Defendant, its agents, or partner entities.

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and a nationwide class (the "Class"), with one subclass (the "Subclass" or "Written Consent Subclass"), defined as follows:

(i) The Class: All persons in the United States and its Territories, who, within four years prior to the commencement of this litigation, were sent one or more text message advertisements from Defendant on their cellular telephones without providing prior express consent to receive such messages.

(ii) The Written Consent Subclass: All persons in the United States and its Territories who, since October 16, 2013, were sent one or more text message advertisements from Defendant on their cellular telephones without providing prior express written consent to receive such messages.

19. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclass and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class and Subclass.

20. Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

21. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class and Subclass in distributing the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

22. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class and Subclass are the same, resulting in injury to the Plaintiff and to all of the other members of the Class and Subclass as a result of Defendant's unlawful distribution of the wireless spam alleged herein.

23. Upon information and belief, there are hundreds, if not thousands, of members of the Class and Subclass such that joinder of all members is impracticable.

24. Common questions of law and fact exist as to all members of the Class and Subclass, and such questions predominate over questions affecting Plaintiff or individual members of the Class or Subclass. Common questions for the Class and Subclass include, but are not limited, to the following:

(a) Did Defendant and/or its agents send one or more text message advertisements to members of the Class and Subclass?

(b) Did Defendant and/or its agents use an automatic telephone dialing system to transmit the text message advertisements at issue?

(c) Did Defendant and/or its agents transmit text message advertisements to persons who did not previously provide Defendant with prior express consent to receive such messages?

(d) Did Defendant and/or its agents transmit text message advertisements after October 16, 2013, to persons who did not previously provide Defendant with prior express written consent to receive such messages?

(e) Did the wireless spam distributed by Defendant violate the TCPA?

(f) Are the Class and Subclass members entitled to treble damages based on the willfulness of Defendant's conduct?

(g) Should Defendant be enjoined from engaging in such conduct in the future?

## COUNT I
### Violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, et seq.) on behalf of the Class and Written Consent Subclass

25. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

26. Defendant directed the placement of unsolicited commercial text message calls to a list of wireless telephone numbers of Plaintiff and the other members of the Class and Subclass using equipment that had the capacity at the time the calls were placed to store or produce telephone numbers to be called using a random or sequential number generator and to automatically dial such numbers without human intervention.

27. These text message calls were made *en masse* through the use of a short code without the prior express consent of Plaintiff and the Class.

28. These text message calls were made *en masse* through the use of a short code without the prior express written consent of Plaintiff and the Subclass.

29. Defendant has, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

30. As a result of Defendant's illegal conduct, the members of the Class and Subclass have had their privacy rights violated, have suffered actual and statutory damages, and under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500.00 in damages for each such violation of the TCPA.

31. To the extent Defendant knew or should have known that the Class members did not provide prior express consent to be sent the wireless spam at issue, the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and members of the Class.

32. To the extent Defendant knew or should have known that the Subclass members did not provide prior express written consent to be sent the wireless spam at issue, the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and members of the Subclass.

WHEREFORE, Plaintiff, on behalf of herself and the Class and Subclass, prays for the following relief:

   A. An order certifying the Class and Subclass as defined above;

   B. An award of statutory damages;

   C. An injunction requiring Defendant to cease all wireless spam activities;

   D. An award of reasonable attorneys' fees and costs; and

   E. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

August 17, 2015

CECILIA SNYDER, individually and on behalf of classes of similarly situated individuals

/s/ David P. Healy
One of Her Attorneys

David P. Healy (940410)
Dudley, Sellers & Healy, PL
Suntrust Financial Center
3522 Thomasville Rd., Suite 301
Tallahassee, Florida 32309
Tel: (850) 222-5400
Fax: (850) 222-7339
dhealy@davidhealylaw.com