**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 15-cv-61718-WPD

CECILIA SNYDER, individually and on
behalf of a class of similarly situated individuals,

                Plaintiff,

            v.

ICARD GIFT CARD, LLC, a Florida limited
liability company, CASHSTAR, INC., a Delaware
corporation,

                Defendants.

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Cecilia Snyder ("Plaintiff") brings this First Amended Class Action Complaint against iCard Gift Card LLC ("iCard") and CashStar, Inc. ("CashStar") (collectively, "Defendants") to stop Defendants' practice of directing the transmission of unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by their conduct. Plaintiff, for her First Amended Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1. In an effort to promote their gift card products, Defendants, sellers of gift cards for retail stores such as Best Buy, JCPenney, Nordstrom, Staples, and Petco, engaged in an

1

invasive and unlawful form of marketing: the transmission of unauthorized advertisements in the form of "text message" calls to the cellular telephones of consumers throughout the nation.

2. By causing and placing these unauthorized text message calls (hereinafter, "wireless spam" or "SMS Messages"), Defendants have violated consumers' statutory and privacy rights and have caused consumers actual harm, not only because consumers were subjected to the aggravation and invasion of privacy that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

3. In order to redress these injuries, Plaintiff, on behalf of herself and a nationwide class of similarly situated individuals, brings this suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), which prohibits unsolicited text calls to cellular phones.

4. On behalf of the class, Plaintiff seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

**PARTIES**

5. Plaintiff is a citizen of Nevada.

6. Defendant iCard is a Florida limited liability company with its principal place of business in Ft. Lauderdale, Florida. iCard is a retailer of gift cards for various stores, restaurants, and other businesses. iCard does business throughout the United States, including in this District.

7. Defendant CashStar is a Delaware corporation, with its principal place of business in Maine. CashStar is a distributor of gift card products to various gift card retailers such as

2

iCard who market and sell CashStar's products on its behalf. CashStar does business throughout the United States, including in this District.

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

9. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b) because Defendant iCard resides in this District, Defendants transact business in this District and a substantial part of the events concerning the wireless spam at issue occurred in this District.

## COMMON ALLEGATIONS OF FACT

10. In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

11. One of the newer types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

12. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

13.     Unlike more conventional advertisements, SMS calls, and particularly wireless spam, invade privacy and can actually cost their recipients money because cell phone users like Plaintiff must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

14.     Beginning in 2015, and continuing for weeks if not months, Defendants directed the mass transmission of wireless spam to the cell phones of individuals intended to be potential purchasers of their gift card products.

15.     For instance, in July 2015, Plaintiff's cell phone rang, indicating that a text message call was being received. The body of such text message read:

> Do you have an iPhone? Download the new iCard Gift Card app in the App Store and save 10% on your gift card purchase. Enter promo code: APP10

16.     The "from" field of the transmission was identified cryptically as "313131," which is an abbreviated telephone number known as an SMS short code operated by iCard and/or its agents. The use of an SMS short code enabled the mass transmission of such wireless spam to a list of cellular telephone numbers.

17.     Many of the gift cards purchased through the "iCard Gift Card app" advertised in the above text message, as well as iCard's online store, are redeemed through CashStar's API ("Application Program Interface") which connects directly to CashStar's gift card distribution service.

18.     Because iCard does not directly contract with all of the various merchants whose gift cards it markets and sells, iCard instead contracts with CashStar, who maintains contracts

4

with numerous merchants to distribute and sell their gift cards to the public through retailers such as iCard.

19. As such, most if not all gift cards purchased through iCard are actually redeemed and fulfilled by CashStar, and it is ultimately CashStar that provides the physical and/or digital gift card that is delivered to the customer.

20. Thus, iCard in fact sells and markets CashStar's gift card products that are made available to iCard and its customers through CashStar's API.

21. Indeed, not only does CashStar directly profit from gift card sales made through iCard, including the iCard Gift Card app advertised in the unauthorized text message received by Plaintiff, but CashStar in fact also directs iCard to market and promote CashStar's gift cards to consumers through advertising campaigns, including the text message advertisements described herein.

22. At no time did Plaintiff provide consent, including any written consent, to receive the above-referenced message or any other such wireless spam from Defendants.

23. The unauthorized text message received by Plaintiff invaded her privacy, took up memory storage space on her cellular telephone, and required her to spend time reviewing and deleting the message from her cell phone.

## CLASS ALLEGATIONS

24. Plaintiff brings this action on behalf of herself and a nationwide class (the "Class"), defined as follows: All persons in the United States and its Territories who, since October 16, 2013, were sent one or more text message advertisements on behalf of Defendants to

their cellular telephone without providing prior express written consent to receive such messages.

25. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

26. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

27. Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in distributing the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

28. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class as a result of Defendants' unlawful distribution of the wireless spam alleged herein.

29. Upon information and belief, there are hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable.

30. Common questions of law and fact exist as to all members of the Class, and such questions predominate over questions affecting Plaintiff or individual members of the Class. Common questions for the Class include, but are not limited, to the following:

    (a) Did Defendants send one or more text message advertisements to members of the Class?

    (b) Did Defendants use an automatic telephone dialing system to transmit the text message advertisements at issue?

    (c) Did Defendants transmit text message advertisements after October 16, 2013, to persons who did not previously provide Defendants with prior express written consent to receive such messages?

    (d) Did the wireless spam distributed by Defendants violate the TCPA?

    (e) Are the Class members entitled to treble damages based on the willfulness of Defendants' conduct?

    (f) Should Defendants be enjoined from engaging in such conduct in the future?

**COUNT I**
**Violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, et seq.)**
**against Defendants on behalf of the Class**

31. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

32. Defendants directed the placement of unsolicited commercial text message calls to a list of wireless telephone numbers of Plaintiff and the other members of the Class using equipment that had the capacity at the time the calls were placed to store or produce telephone numbers to be called using a random or sequential number generator and to automatically dial such numbers without human intervention.

33. These text message calls were made *en masse* through the use of a short code without the prior express written consent of Plaintiff and the Class.

34. Defendants have, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

35. As a result of Defendants' illegal conduct, the members of the Class have had their privacy rights violated, have suffered actual and statutory damages and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500.00 in damages for each such violation of the TCPA.

36. To the extent Defendants knew or should have known that the Class members did not provide prior express written consent to be sent the wireless spam at issue, the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and members of the Class.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

    A.    An order certifying the Class as defined above;

    B.    An award of statutory damages;

    C.    An injunction requiring Defendants to cease all wireless spam activities;

    D.    An award of reasonable attorneys' fees and costs; and

E. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

December 28, 2016          CECILIA SNYDER, individually and on behalf of a class of similarly situated individuals

                /s/ David P. Healy
                One of Her Attorneys

David P. Healy
Dudley, Sellers, Healy & Heath, PLC
Suntrust Financial Center
3522 Thomasville Rd., Suite 301
Tallahassee, Florida 32309
Tel: (850) 222-5400
Fax: (850) 222-7339

Eugene Y. Turin (*pro hac vice*)
McGuire Law, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Attorneys for Plaintiff*