**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:15-cv-61718-WPD**

CECILIA SNYDER, individually and on
behalf of classes of similarly situated individuals,

      Plaintiff,

v.

ICARD GIFT CARD, LLC, a Florida limited
liability company, and CASHSTAR INC.,
a Delaware corporation,

      Defendants.
_____/

**DEFENDANT, CASHSTAR INC.'S MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM**

Defendant, CashStar Inc., ("CashStar") hereby files its Motion to Dismiss for Failure to State a Claim, as follows:

**I.    INTRODUCTION**

On August 17, 2015, Plaintiff filed her initial Complaint alleging that Defendant iCard Gift Card, LLC ("iCard") violated the Telephone Consumer Protection Act ("TCPA") by sending "text message calls to the cellular telephones of consumers." [D.E. 1, at ¶1]. Then, after approximately sixteen (16) months of motion practice and discovery (including discovery as to "iCard's financials"), as well as failed settlement discussions with iCard, Plaintiff sought leave to amend her complaint to add CashStar as a defendant. [D.E. 60, p. 4.]. In other words, after failing to settle her claim with iCard, Plaintiff set out to find another pocket and now seeks to improperly hold CashStar liable for the text message sent by iCard. In support of that effort,

Plaintiff has put forth purely speculative, conclusory allegations that cannot survive a challenge under F.R.C.P. 12(b)(6).

In a purely conclusory fashion and without any support, Plaintiff's Motion to Amend asserts CashStar "directed Defendant iCard to place the unlawful text message at issue." [D.E. 65, at pp. 1, 2, 12]. Plaintiff's First Amended Class Action Complaint (the "Amended Complaint") then simply blends CashStar and iCard together to blame them both for the text messages that iCard sent. [D.E. 65, D.E. 34, at ¶¶ 2-6]. Regardless of this ambiguity in the Amended Complaint, it cannot be disputed that CashStar cannot be directly liable for a violation of the TCPA since CashStar never sent (or "initiated") any text message at issue here.[1] It is clear, therefore, that Plaintiff's attempt to drag CashStar into this case is based on legally deficient aiding and abetting or vicarious liability theories.

Regardless of her theory of recovery, the Plaintiff's claim against CashStar fails because (1) as a matter of law, there is no aiding and abetting liability under the TCPA; and (2) Plaintiff's concocted vicarious liability theory is entirely unsupported by the facts pled and the case law she relies upon, and is based entirely on improper "labels and conclusions." An examination of the cases the Plaintiff cites in her Motion to Amend (as well as others addressing vicarious liability under the TCPA) shows that Plaintiff is attempting to fit the proverbial round peg into the square hole by making broad, unsupported allegations that attempt to entirely re-characterize the express language of the CashStar-iCard Agreement and CashStar's limited contractual role as a supplier of gift cards. In summary, Plaintiff's Amended Complaint should be dismissed because it lacks any basis for the allegations against CashStar except for unsupported "labels and conclusions" that Fed R. Civ P. 12(b)(6) is intended to preclude.

---

[1] Nothing in this Motion is intended as, or should be construed as, a statement or implication by CashStar that iCard violated any local, state, or federal laws. CashStar is not aware of any such violations.

## II. FACTS

### 1. Procedural History

Plaintiff, Cecelia Snyder ("Plaintiff"), filed her Complaint on August 17, 2015, alleging iCard violated the TCPA. [D.E. 1]. On December 5, 2016, Plaintiff filed her Motion to Amend to add CashStar as a defendant. [D.E. 60]. On December 27, 2016, this Court granted Plaintiff's Motion to Amend. [D.E. 64]. On December 28, 2016, Plaintiff filed the Amended Complaint. [D.E. 65].

Plaintiff's Motion to Amend explains the path that brought her to attempt to add CashStar, and unveils her improper motivations in doing so. Specifically, after receiving from iCard "information as to the size of the class. The Parties then engaged in extensive settlement discussion. [D.E. 60, p. 4.]. "As part of these discussions … Plaintiff propounded a second set of discovery requests regarding iCard's financials." [*Id*.]. The settlement discussions "did not result in any settlement." [*Id.*]. Then, Plaintiff went fishing and began serving a series of third party subpoenas. [D.E. 60, p 2]. Plaintiff served such a subpoena on CashStar and, in response, CashStar produced the January 19, 2012 Digital Gift Card Distribution Agreement between CashStar and iCard (the "Agreement"). [D.E. 60, pp. 4-5]. Interestingly, while Plaintiff references CashStar's production of the Agreement in her Motion to Amend and relies upon such production to assert that "it became apparent that CashStar was jointly responsible for the unlawful text message calls at issue," Plaintiff does not attach the Agreement either to her Motion or the Amended Complaint. [D.E. 60, p. 5; *see also* D.E. 65, ¶ 18]. Instead, after obtaining financial information from iCard and failing to settle her case, Plaintiff decided to target CashStar and summarily assert, without any support, that CashStar "worked with, and directed, Defendant iCard to place the unlawful text messages at issue." [D.E. 60, pp. 1, 2, 12].

To support her concocted theory, in the Amended Complaint, Plaintiff simply combines the Defendants as "sellers of gift cards for retail stores" and asserts the "Defendants engaged in an invasive and unlawful form of marketing: the transmission of unauthorized advertisements in the form of 'text message' calls . . ." [D.E. 65, at ¶ 2].

**2.     The CashStar-iCard Agreement**

The CashStar-iCard Agreement, which is attached hereto as Exhibit A[2], was executed January 19, 2012 and provides that CashStar will provide its API (application programming interface) to iCard to allow iCard to order digital gift cards through CashStar's platform. [Exhibit A, p. 1 General Description]. The Agreement provides that iCard "will market and promote the Cards via relevant points of contact with Members, including but without limitation [iCard's] Sites and current advertising campaigns where appropriate." [Exh. A., p. 3, Section 5]. The Agreement further provides that iCard "will perform its obligations hereunder in accordance with all applicable federal, state and local laws, rules and regulations now or hereafter in effect." [Exh. A, p. 6, Section 18d]. The Agreement further provides that iCard is an independent contractor, and that "none of the terms set forth in this Agreement will be construed as creating a partnership, joint venture, agency, master-servant, employment, trust, or any other relationship . . ." [Exh. A., p. 4, Section 9]. The Agreement makes no reference of any kind to telephone calls or text messages to consumers, and does not direct or authorize iCard to place telephone calls or send text messages to anyone by or on behalf of CashStar. [Exh. A].

---

[2] Since Plaintiff specifically references the Agreement in her Motion to Amend and makes reference to the contract between CashStar and iCard in the Amended Complaint, which Agreement is central to the Plaintiff's claim against CashStar, the Court may consider the Agreement as part of the pleadings for purposes of Rule 12(b)(6) dismissal, and CashStar's attaching the Agreement to its Motion to Dismiss will not require conversion of the motion into a motion for summary judgment. *See Brooks v. Blue Cross and Blue Shield of Florida*, 116 F. 3d 1364, 1369 (11th Cir. 1997); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 978 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

### 3. Plaintiff's Involvement with iCard and The Text Message

As shown in the voluminous motion practice to date in this matter, including Plaintiff's April 7, 2016 Declaration, Plaintiff's allegations arise from her use of iCard's website, www.icardgiftcard.com. [D.E. 65; D.E. 42-3]. The record contains printouts from the iCard website, including the pages visited by Plaintiff, as well as her description of the steps she took to register through iCard's website. [*Id.; see also* D.E. 80-2]. None of the printouts from the iCard website previously relied upon and submitted to the Court by both Plaintiff and iCard refer to or mention CashStar.

The text message at issue states, in totality, "Do you have an iPhone? Download the new iCard Gift Card app in the App Store and save 10% on your gift card purchase. Enter promo code: APP10." [D.E. 65, at ¶ 15]. The text message does not reference CashStar in any way or state it was sent by or on behalf of CashStar.

### III. MEMORANDUM OF LAW

#### A. Motion to Dismiss for Failure to State a Claim

To sustain her claim against CashStar, the Plaintiff must meet her "obligation to provide the grounds of [her] entitlement to relief," and she must allege more than "labels and conclusions"; her complaint must include "[f]actual allegations [adequate] to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). Thus, the factual allegations in the Amended Complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Id*. Additionally, "while notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under some viable legal theory.'" *Financial Security Assurance, Inc. v. Stephens, Inc. et al.*, 500 F. 3d. 1276 (11th Cir. 2007) (citations omitted). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Management, Ltd. v. Jaharis*, 297 F. 3d 1182, 1188 (11th Cir. 2002).

The Amended Complaint is replete with conclusory allegations, and unsupported and unwarranted deductions that should not survive dismissal.

### 1. Plaintiff Cannot Establish Direct Liability Against CashStar

Plaintiff has intentionally lumped the Defendants together in the Amended Complaint in an attempt to create liability against CashStar for the text message sent by iCard. For example, the Amended Complaint asserts "[b]eginning in 2015, and continuing for weeks if not months, Defendants directed the mass transmission of wireless spam to the cell phones of individuals intended to be potential purchasers of their gift cards." [D.E. 65, at ¶ 14]. Such lumping together of the Defendants is, in and of itself, grounds for dismissal of the Amended Complaint. *See Bentley v. Bank of America, NA*, 773 F. Supp. 2d 1367 (S.D. Florida 2011) (dismissing section 227(b)(1)(A) claim because "nowhere in the complaint does Plaintiff identify which Defendant made each call, but instead he simply lumps the Defendants together despite that they are separate and distinct legal entities.").

Despite her unsupported allegations as they pertain to CashStar, Plaintiff cannot dispute that iCard sent the text message at issue, not CashStar. Plaintiff has previously asserted this fact in this case, and again concedes this point in the Amended Complaint where she alleges the text message at issue came from an "SMS short code operated by iCard and/or its agents." [D.E. 65, at ¶¶ 15, 16]. As such, CashStar cannot be held directly liable for any violation of the TCPA.

As explained in *Shamblin v. Obama for America*, 2015 WL 1754628 (M.D. Fla. Apr. 17, 2015), which Plaintiff cites in her Motion to Amend, the FCC has established that "a seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *Shamblin*, 2015 WL 1754628, at *5 (citing *Dish Network LLC Declaratory Ruling*, 28 FCC Rcd. 6574 (2013)). It was established long ago that iCard sent the text message at issue here, not CashStar. Accordingly, Plaintiff cannot assert that CashStar initiated or sent any such text message, and CashStar is therefore not directly liable for any violation of the TCPA. Any attempt by the Plaintiff to assert otherwise is entirely unsupported and must be rejected.

### 2.      Plaintiff's Aiding and Abetting Theory Must Be Rejected

To the extent Plaintiff is attempting to assert that CashStar is somehow liable for the text message sent by iCard based on an aiding and abetting theory, such a theory is not recognized under the TCPA.

As noted by the Supreme Court in *Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), aiding and abetting liability in the civil context is not generally available, and requires specific Congressional action as determined on a statute-by-statute basis. *Central Bank*, at 181-82. "When Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abetters." *Central Bank*, at 182. The TCPA does not provide for liability under an aiding and abetting theory. *See Baltimore-Washington Telephone Co. v. Hot Leads Co., LLC,* 584 F. Supp. 2d 736, 745 (D. Md. 2008); TCPA, 47 U.S.C. § 227(b)(3).

7

The conclusory allegations of the Amended Complaint are that CashStar "directed" iCard to send the text message. [D.E. 65, ¶¶ 16, 21]. Plaintiff, of course, provides no support for this conclusion. To the extent Plaintiff is attempting to assert that CashStar aided and abetted iCard in violating the TCPA, there is no such viable theory of recovery, and any such attempt should be rejected, and the claims dismissed.

### 3. Plaintiff Cannot Establish CashStar is Vicariously Liable for iCard's Alleged Violation of the TCPA

As set forth above, Plaintiff cannot establish any claim for direct liability against CashStar, and likewise cannot assert a claim that CashStar aided and abetted iCard in a violation of the TCPA. A vicarious liability theory, therefore, is Plaintiff's only hope. An analysis of the established law, coupled with the purely speculative and unsupported "labels and conclusions" of the Amended Complaint. shows that Plaintiff cannot sustain such a claim and CashStar should be dismissed from this action.

#### a. Overview of Vicarious Liability Under the TCPA

Again, the allegations of the Amended Complaint are vague to the extent the Plaintiff intentionally lumps Defendants iCard and CashStar together. That said, it appears that the Plaintiff is attempting to establish CashStar's liability for iCard's alleged TCPA violation based on a vicarious liability theory. Plaintiff's Motion to Amend asserts that "as the entity that directly benefitted from and directed iCard to undertake such marketing activity, CashStar can be held jointly liable with iCard." [D.E. 60, at p. 14]. In support of her argument, Plaintiff cites to *Shamblin v. Obama for America*, 2015 WL 1754628 (M.D. Fla. Apr. 17, 2015) and the FCC's Declaratory Ruling, *Dish Network LLC Declaratory Ruling*, 28 FCC Rcd. 6574 (2013). Applying those teachings (as well as the teachings from other courts that have considered

8

vicarious liability under the TCPA), to the unsupported conclusory allegations of the Amended Complaint shows the Amended Complaint must be dismissed as against CashStar.

As the Court noted in *Shamblin*, the "FCC has explained that vicarious liability may be predicated upon federal common law agency principles." *Shamblin*, at * 6 (citing *Dish Network*, 28 FCC Rcd. at 6586). As explained by the court, those principles include classical agency, apparent authority, and ratification. *Id.* "A court determining the existence of vicarious liability must first assess whether the principal had the necessary agency relationship with the direct wrongdoer to support such liability." *Legg v. Voice Media Group, Inc.*, 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014) (*citing CFTC v. Gibraltar Monetary Corp.*, 575 F.3d 1180, 1189 (11th Cir. 2009). To support the requisite agency relationship, the Plaintiff would have to establish that CashStar "exercised substantial control over" iCard's actions, or "ratification of the agent's conduct, or representations that the agent acts with authority . . ." *Legg*, 20 F. Supp. 3d at 1377 (citing *CFTC*, 575 F.3d at 1189 and *Dish Network*, 28 FCC Rcd. At 6586-87). Additionally, the "FFC has specifically 'rejected' the argument that vicarious liability extends beyond these delineated agency principles in the context of the TCPA." *Id*. (citing *Dish Network*, at 6585-86).[3]

---

[3] It is worth noting that *Shamblin* involved claims that DNC Services Corporation should be vicariously liable for calls made by Obama for America. *Shamblin,* at *1. In *Shamblin,* "the record shows that DNC Services provided voter information to Obama for America, reviewed telemarketing scripts, and also provided technical support." *Id.* at * 5. The FCC's Declaratory Ruling in *Dish Network* involved petitions to the FCC that arose in two federal court lawsuits, each of which concerned "telemarketing retailers" and "authorized dealers" making telemarketing calls attempting to sell satellite television services for EchoStar and Dish Network, respectively. *Dish Network*, at 6576-6579. The FFC addressed whether a company specifically hiring a telemarketer to market their products could be liable even though they did not directly "initiate" such calls, and reasoned that "both the entity that engages a telemarketer and the telemarketer so engaged *may* be liable for TCPA violations." *In re Dialing Services, LLC*, 29 FCC Rcd. 5537 (2014) (referencing *Dish Network*) (emphasis added).

### b. Plaintiff Has Not Set Forth a Valid Vicarious Liability Theory

The Amended Complaint fails to assert a proper claim for vicarious liability as against CashStar. The Amended Complaint lacks required allegations, and instead relies on unsupported "labels and conclusions" that do not satisfy the legal requirements for vicarious liability under the TCPA, and should thus be rejected under F.R.C.P. 12(b)(6). The reason the Amended Complaint lacks such allegations is because Plaintiff simply can not assert the required elements in good faith.

The CashStar-iCard Agreement does not address telemarketing or text message campaigns in any way. [Exh. A.]. Given this, Plaintiff is attempting to conflate the "marketing" mentioned in the Agreement with the type of "telemarketing" addressed in the case law and FCC Declaratory Ruling she relies upon. Plaintiff then takes the unsupported, conclusory leap to say that the CashStar-iCard Agreement somehow establishes a principal-agency relationship and further that it means CashStar was hiring or directing iCard to telemarket its products. As set forth above, the CashStar-iCard Agreement explicitly states that no principal-agency relationship is created, no such direction is included in the CashStar-iCard Agreement, and Plaintiff cannot point to anything to support such a bald assertion. Instead, Plaintiff attempts to deduce that when the Agreement states that iCard "will market and promote Cards" that CashStar somehow exercised substantial control over, and directed iCard, to engage in an improper text message campaign. [*See* Exh. A. at p. 3, Section 5; D.E. 65, at ¶ 21]. There is no support for such an allegation, and such "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" cannot survive dismissal. *Oxford Asset Management, Ltd. v. Jaharis*, 297 F. 3d 1182, 1188 (11th Cir. 2002).

### 1. Lack of Substantial Control

The Amended Complaint fails to set forth anything to establish that CashStar "exercised substantial control over" iCard's actions. *Legg*, 20 F. Supp. 3d at 1377 (citing *CFTC*, 575 F.3d at 1189. The United States District Court for the Southern District of Florida has reasoned that the issue of "control" is key to the determination of whether a party will be vicariously liable for unconsented to calls made on its behalf pursuant to section 227(b)(1)(A)(iii) of the TCPA. *Mais v. Gulf Coast Collection Bureau, Inc. et al.*, 944 F. Supp. 2d 1226, 1243 (S.D. Florida 2013) (rev'd in part 768 F.3d 1110 (11th Cir. 2014).[4]  In *Mais*, the plaintiff, Mark Mais, sued medical provider Florida United Radiology ("Florida United"), Sheridan Acquisitions, P.A. ("Sheridan"), Florida United's parent company, and Gulf Coast Collection Bureau ("Gulf Coast") for violating the TCPA, section 227(b)(1)(A)(iii) (the same section cited in the Plaintiff's complaint here). Mais alleged that Florida United and Sheridan were vicariously liable for 15-30 predictive dialer bill collection calls Gulf Coast made to his cell phone in violation of the TCPA. *Mais* at 1231.

The *Mais* Court granted summary judgment in favor of Florida United and Sheridan as to the claims that they were vicariously liable for Gulf Coast's actions on the grounds that neither Sheridan nor Florida United "exercised, or had the right to exercise the kind of control over Gulf Coast necessary to create vicarious liability." *Id.* at 1244.  First the court analyzed the parties' bill collection contract.  *Id.*  The contract identified Gulf Coast as an "independent contractor." *Id.* "Most significantly" the *Mais* Court noted, the contract "is silent" as to how Gulf Coast would collect debts.  *Id.*  It did not specify equipment to be used by Gulf Coast (i.e. predictive dialer) to carry out debt collection or define procedures Gulf Coast would use to communicate with debtors.  "By its silence, the contract left such matters to Gulf Coast's judgment and wisdom as an expert debt collector." *Id.*  The *Mais* Court highlighted the fact that the contract

---

[4] The Court of Appeals for the 11th Circuit reversed *Mais*, in part, on other grounds that did not affect the District Court's entry of summary judgment against Florida United and Sheridan.  *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F. 3d 1110 (11th Cir. 2014).

required Gulf Coast to do all work in accordance with the law. *Id*. Ultimately, the Mais Court found an "absence of control" of "all relevant aspects of Gulf Coast's conduct or procedures" and held there cannot be vicarious liability. *Id.*

Similarly, the CashStar-iCard Agreement identifies iCard as an independent contractor, and does not direct or instruct iCard as to how it would conduct its business or "market" gift cards. Like the contract in *Mais*, the Agreement is silent as to how iCard would market gift cards, other than stating iCard would "market and promote the Cards via relevant points of contact with Members, including but without limitation [iCard's] Sites and current advertising campaigns where appropriate." [Exh. A, at p. 3, § 5]. Also like the contract in *Mais*, the Agreement further provides that iCard "will perform its obligations hereunder in accordance with all applicable federal, state and local laws, rules and regulations now or hereafter in effect." [Exh. A, p. 6, Section 18d].

### 2. The Amended Complaint Does Not Establish Grounds for Apparent Authority

Similarly, Plaintiff cannot point to a single fact, website printout, or anything that amounts to "representations that the agent acts with authority . . ." to support an apparent authority argument. *Legg*, 20 F. Supp. 3d at 1377 (citing *CFTC*, 575 F.3d at 1189 and *Dish Network*, 28 FCC Rcd. At 6586-87). As Plaintiff herself explained in her Declaration submitted to the Court on April 8, 2016, she visited iCard's website in 2013 and completed a "New Customer Account Set-Up form". [D.E. 42-3, ¶¶ 2-3]. Plaintiff has also previously filed with the Court printouts from the iCard website she visited in support of her prior motion practice. [D.E. 42-4; see also iCard Website printouts submitted by iCard at D.E. 80-1]. Nothing therein points to CashStar, and the Amended Complaint does not allege in any way that iCard somehow held out to the Plaintiff (or anyone else) that it was the agent of CashStar or acting with authority

on behalf of CashStar. See *Legg*, 20 F. Supp. 3d at 1377 (citing *CFTC*, 575 F.3d at 1189 and *Dish Network*, 28 FCC Rcd. At 6586-87) (discussing apparent authority agency principle).

### 3. No Ratification

Lastly, Plaintiff does not allege that CashStar somehow ratified the text message at issue, and Plaintiff cannot point to any fact that would establish that CashStar was even aware of the text message campaign that iCard admits it elected to send in mid-2015. [D.E. 34, ¶¶ 2-6]. *See Legg*, 20 F. Supp. 3d at 1377 (discussing ratification and citing *CFTC*, 575 F.3d at 1189 and *Dish Network*, 28 FCC Rcd. At 6586-87). Further, the text message at issue states, in totality, "Do you have an iPhone? Download the new iCard Gift Card app in the App Store and save 10% on your gift card purchase. Enter promo code: APP10." [D.E. 65, at ¶ 15]. The text message does not reference CashStar in any way or state it was sent by or on behalf of CashStar.

Plaintiff cannot sustain a claim that CashStar is vicariously liable for iCard's violation of the TCPA because Plaintiff cannot establish the requisite agency relationship that the FCC mandates to sustain such a theory. Neither can Plaintiff hide behind, or attempt to rely on "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" to prevent dismissal of her claim against CashStar. *Oxford Asset Management, Ltd. v. Jaharis*, 297 F. 3d 1182, 1188 (11th Cir. 2002).

### IV. CONCLUSION

For the reasons set forth herein, Plaintiff's Amended Complaint should be dismissed for failure to state a claim against CashStar.

WHEREFORE, for the foregoing reasons, Defendant CashStar Inc. respectfully requests that this Court enter an Order (1) dismissing Plaintiff's Amended Complaint as against CashStar; and (2) entering all such other relief as is deemed just and equitable under the circumstances.

DATED this 24th day of February, 2017.

>Respectfully Submitted,
>
>**Law Offices of Nolan Klein, P.A.**
>*Attorneys for Defendant, CASHSTAR INC.*
>Wells Fargo Tower – Suite 1500
>One East Broward Boulevard
>Fort Lauderdale, FL  33301
>PH:     (954) 745-0588
>FAX:   (877) 253-1691
>
>By:   */s/ Nolan Klein*
>       NOLAN KLEIN, ESQUIRE
>       Florida Bar No. 647977
>       klein@nklegal.com
>       amy@nklegal.com
>
>**Stevenson McKenna & Callanan LLP**
>Alan E. McKenna, Esquire
>ADMITTED PRO HAC VICE
>*Attorneys for Defendant, CASHSTAR INC.*
>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>(p)  781-740-1115
>(f)  617-330-5011
>amckenna@smcattorneys.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing instrument was e-filed with the Clerk of the Court using CM/ECF, this **24th** day of **February**, 2017.

By: _/s/ Nolan Klein_
NOLAN KLEIN, ESQUIRE
Florida Bar No. 647977

## SERVICE LIST:

**DAVID P. HEALY, ESQUIRE**
Fla. Bar No. 940410
Dudley, Sellers & Healy, PL
Suntrust Financial Center
3522 Thomasville Rd., Suite 301
Tallahassee, FL 32309
PH:    (850) 222-5400
FAX:   (850) 222-7339
*dhealy@davidhealylaw.com*
*Attorney for Plaintiff*

**EUGENE Y. TURIN, ESQUIRE**
*Pro Hac Vice*
McGuire Law, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
*eturin@mcgpc.com*
*Attorney for Plaintiff*

**ALAN E. MCKENNA, ESQUIRE**
*Pro Hac Vice*
Stevenson McKenna & Callanan LLP
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(p)  781-740-1115
(f)  617-330-5011
amckenna@smcattorneys.com
*Attorney for CashStar Inc.*